Baldi v. Bourn                         CV-01-396-JD  10/30/02
            UNITED STATES DISTRICT COURT FOR THE
                   DISTRICT OF NEW HAMPSHIRE


John Baldi

      v.                          Civil No. 01-396-JD
                                  Opinion No. 2002 DNH 194
Eric Bourn, James McKenzie,
and Paul Pearson


                            O R D E R


     John Baldi, proceeding pro se, brings a civil rights action
and related state law claims against Eric Bourn, a police officer
in Epsom, New Hampshire; James McKenzie, a conservation officer
with the New Hampshire Fish and Game Department, and Paul
Pearson, a resident of Epsom.  Baldi alleges that the defendants
violated his Fourth and Fourteenth Amendment rights and committed
many state law violations when Bourn and Pearson entered Baldi's
field after Baldi shot two deer.  The federal claims against
James McKenzie and some of the state claims against Eric Bourn
were previously dismissed.  See Order, May 16, 2002.  Each of the
defendants now moves for summary judgment on all of the remaining
claims.  John Baldi moves for summary judgment in his favor as to
eight of his state law claims brought against all three
defendants.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002). When parties file cross-motions for summary judgment, the court must consider the motions separately to determine whether summary judgment may be entered under the Rule 56 standard. Id.

## Background[1]

Baldi lives on Center Hill Road in Epsom, New Hampshire, where he grows alfalfa and Christmas trees. Due to crop damage

---

[1]Because Baldi did not provide a properly supported factual statement either in support of his own motion for summary judgment or in opposition to Bourn's and Pearson's motions, the background facts are primarily taken from the statements in the motions filed by Bourn and Pearson with additional information noted. See LR 7.2(b).

2

caused by deer, Baldi obtained an order from the Merrimack County Superior Court, in 1995, requiring the New Hampshire Fish and Game Department to enter an agreement with him to allow him to shoot deer on his property for a period of four years. During the evening of October 30, 1998, Baldi shot and killed two deer in his field, which is across the street from his house.

Bourn was on duty that evening and received a radio dispatch that there were gunshots in a field at Center Hill Road and Mountain Road. He drove down Mountain Road and entered the field at the Mountain Road entrance. He drove across the field until his lights shone on Baldi. Bourn saw one deer lying next to Baldi, and talked with Baldi about the complaints of gunshots. Baldi told Bourn that he had shot two deer that were damaging his crops.

While Bourn and Baldi were talking, Pearson drove his truck up to where they were standing. Pearson works for a propane gas company and was on call during the evening of October 30. The circumstances surrounding his arrival at Baldi's field are disputed.[2] Pearson got out of his truck and complained about

[2]Pearson states that he and his wife and children live on Mountain Road across from the Baldi property. Pearson was paged by his company to go out on a call and while he was preparing to leave, he and his wife heard as many as six or ten gunshots. Because an Epsom police officer had been shot and killed several weeks earlier, he was concerned when he saw a police cruiser in the field. Bourn testified in his deposition that as he was heading toward Baldi's field, in response to the call from

gunshots.[3]  Baldi and Pearson argued, and Bourn told Pearson that everything was under control and that he should leave.  Pearson left, and Bourn also left soon after.

McKenzie, who is a New Hampshire Fish and Game Department conservation officer, was notified of the shots having been fired while he was patrolling in Auburn, New Hampshire, that night.  He drove to Mountain Road in Epsom where he saw Bourn's cruiser.[4]  Bourn told McKenzie that Baldi fired the shots.  McKenzie left because he knew that Baldi had a permit to shoot deer.

In Count I, Baldi alleges that Bourn violated Baldi's right to equal protection, under the Fourteenth Amendment, by failing to charge Pearson for driving onto Baldi's field and failing to charge McKenzie for conspiring with Pearson.  Baldi characterizes Pearson's actions as assault, criminal threat, and criminal trespass.  In Count II, Baldi alleges that Bourn conspired with McKenzie and Pearson to acquiesce in Bourn's failure to prosecute

---

dispatch, he saw Pearson's truck driving along Center Hill Road. Baldi contends that Pearson met with McKenzie at a cemetery not far from the field and that Pearson then went to the field at McKenzie's urging.

[3]Baldi claims that Pearson drove the truck at a high rate of speed and in a threatening manner and that Pearson was shouting, although he does not support his version of events with an affidavit or admissible evidence.

[4]Baldi contends that McKenzie was "parked" outside of his field while McKenzie states in his affidavit that he stopped to talk with Bourn when he saw the cruiser leaving the field.

4

Pearson for his "criminal" actions against Baldi.  In Count III, Baldi alleges that the three defendants' actions were a violation of his Fourth Amendment right to be secure in his person and property, and he alleges the same Fourth Amendment violation as a conspiracy in Count IV.  In Counts V and VI, he alleges a violation of his right to possess, protect, and use property in violation of the Fourteenth Amendment and a conspiracy.

## Discussion

Baldi moves for summary judgment as to Counts VII through XIV.  Counts VII through X allege violations of the New Hampshire Constitution, and Counts XI through XIV allege violations of New Hampshire criminal and fish and game statutes.  McKenzie moves for summary judgment as to the state law claims against him, counts VII through XXI, as the federal claims against him were previously dismissed.  Pearson moves for summary judgment on all claims, and Bourn moves for summary judgment on counts I through XIV, as the remaining state law claims, XV through XXI, were previously dismissed as to him.  Because subject matter jurisdiction as to the state law claims is supplemental to the federal claims in this case, the court will first address the motions that seek summary judgment as to the federal claims.  See Fed. R. Civ. P. 28 U.S.C. § 1367(a); see also O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 273 (1st Cir. 2001).

5

The court previously addressed Baldi's federal claims in the context of McKenzie's motion to dismiss. Although Count I was not at issue in McKenzie's motion, it is based on the same underlying legal principle as Count II. The same legal standards that were discussed in the context of McKenzie's motion apply to Baldi's federal claims for purposes of the motions for summary judgment.

A. Equal Protection Claims

Baldi contends that Bourn's failure to criminally charge Pearson, based on his actions of driving his truck onto Baldi's field without authorization and getting out of the truck to talk with Bourn and Baldi, constitute an equal protection violation. Bourn asserts, in support of summary judgment, that there is no evidence that he was motivated by discriminatory intent in deciding not to arrest Pearson. Baldi also alleges, in Count II, that Bourn, Pearson, and McKenzie conspired to cause the events of October 30 in violation of his right to equal protection.

The equal protection clause of the Fourteenth Amendment requires states to provide "equal protection of the laws" to all persons within a state's jurisdiction. U.S. Const. amend XIV. To succeed on an equal protection claim, a plaintiff must prove both that he was treated differently than others who were similarly situated and that the difference in treatment was based

6

on an impermissible consideration or that no rational basis exists for the difference in treatment. See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000); Wojcik v. Mass. State Lottery Comm'n, 300 F.3d 92, 104 (1st Cir. 2002); Macone v. Town of Wakefield, 277 F.3d 1, 10 (1st Cir. 2002). See also Barrington Cove Ltd. P'ship v. R.I. Housing & Mortgage Fin. Co., 246 F.3d 1, 7 (1st Cir. 2001). Since there is no constitutional right to police protection, to prove a violation of equal protection based on an officer's failure to prosecute criminal conduct, a plaintiff must demonstrate a factual basis for the officer's discriminatory intent. See Hayden v. Grayson, 134 F.3d 449, 452-53 (1st Cir. 1998); Pariseau v. City of Brockton, 135 F. Supp. 2d 257, 262 (D. Mass. 2001); see also United States v. Armstrong, 517 U.S. 456, 465 (1996).

There is no evidence in the record that Bourn treated Baldi any differently than others in similar situations. Baldi provides no evidence that under similar circumstances Bourn has charged others with criminal trespass, assault, or criminal threatening. Baldi also fails to provide any evidence that Bourn was motivated by discriminatory intent. Therefore, based on the record, no factual issue exists as to whether Bourn's decision not to charge Pearson was discriminatory as to Baldi. Because a civil rights conspiracy claim requires proof of a constitutional deprivation, Bourn and Pearson are also entitled to summary

judgment on Baldi's claim in Count II that they conspired to violate his right to equal protection.[5]  See Brennan v. Hendrigan, 888 F.2d 189, 195 (1st Cir. 1989); Rubin v. Smith, 919 F. Supp. 534, 539 (D.N.H. 1996).

B.  Fourth Amendment Claims

Baldi contends in Counts III and IV that Bourn and Pearson, along with McKenzie, violated his Fourth Amendment right to be secure in his person and property.  In response to Bourn's motion for summary judgment, Baldi emphasizes that he asserts a violation of his "security interest" not his liberty interest under the Fourth Amendment.  Baldi does not further explain his "security interest" theory or cite cases in support of that theory.  In response to Pearson's motion, however, Baldi asserts that he was "seized" by Bourn and assaulted by Pearson in violation of the Fourth Amendment.

"The Fourth Amendment provides that '[t]he right of the people to be secure in their persons, houses, papers, and

_____

[5]In addition, Baldi provides no plausible evidence of a conspiracy, and Bourn's and Pearson's affidavits provide competent and uncontradicted evidence that no conspiracy existed. The party with the burden of proof, Baldi in this case, cannot rely on speculation or conjecture and instead must present sufficient evidence on essential factual elements of each claim to generate a trialworthy issue.  See In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001).

effects, against unreasonable searches and seizures, shall not be violated . . . .'" Nieves v. McSweeney, 241 F.3d 46, 54 (1st Cir. 2001) (quoting U.S. Const. amend. IV). "'[A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" Fournier v. Reardon, 160 F.3d 754, 757 (1st Cir. 1998) (quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980)). Intrusions into personal privacy implicate the Fourth Amendment only when the challenged conduct infringes on a person's actual expectation of privacy that society also recognizes as reasonable. Vega-Rodriguez v. P.R. Tel. Co., 110 F.3d 174, 178 (1st Cir. 1997); United States v. Lewis, 40 F.3d 1325, 1333 (1st Cir. 1994).

Privacy rights have been recognized in the home and places adjacent to the home, known as the curtilage, but not in less private areas such as the walkway leading to the house. See Bilida v. McCleod, 211 F.3d 166, 171 (1st Cir. 2000). Open fields, even those protected with fencing and "no trespassing" signs, are not subject to an expectation of privacy protected by the Fourth Amendment. Oliver v. United States, 466 U.S. 170, 176 (1984); see also United States v. Lewis, 240 F.3d 866, 871 (10th Cir. 2001); Maughon v. Bibb County, 160 F.3d 658, 661 (11th Cir. 1998). A voluntary discussion with police, when the individual

9

is free to leave, is neither a search nor a seizure.  See United States v. Scott, 270 F.3d 30, 40 (1st Cir. 2001).

Nothing in the record presented for summary judgment suggests that Baldi was not free to leave at any time while Bourn and Pearson were on his property.  There is also no evidence that Baldi was assaulted by Pearson.  Baldi does not have privacy interests in his open field, which is located across the street from his house.  Therefore, Baldi has not shown that a material factual dispute exists as to whether his Fourth Amendment rights were violated by Bourn's entrance onto his field and discussion with him or by Pearson's arrival in his truck and his complaints about the gunshots.  As noted above, in the absence of a constitutional violation, Baldi cannot maintain his conspiracy claim.  Bourn and Pearson are entitled to summary judgment with respect to Counts III and IV.


C.  Fourteenth Amendment Property Claims

In Counts V and VI, Baldi contends that the defendants' actions interfered with his right to use his family property and his right to exclude others from the property.  Baldi appears to focus on the conscience-shocking standard for substantive due process.  Bourn and Pearson move for summary judgment on the ground that no evidence shows a procedural or substantive due process violation.

10

Pertinent to Baldi's claim, the Fourteenth Amendment prohibits the states from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. As part of a procedural due process claim under the Fourteenth Amendment, a plaintiff must allege facts to show that the defendants deprived him of a property interest protected by state law.[6] See PFZ Props., Inc. v. Rodriguez, 928 F.2d 28, 30 (1st Cir. 1991). To state a substantive due process claim, a plaintiff must allege either that he was deprived of a protected property interest or entitlement or that the defendants' "conduct was so egregious as to shock the conscience." Barrington Cove Ltd., 246 F.3d at 5.

Baldi's allegations do not suggest that he was deprived of any property interest or protected entitlement by Bourn's and Pearson's brief entries onto the field. The defendants did not take anything or prevent Baldi from using his property.[7] Under

_____

[6]It is well-established that a state "may adopt reasonable restrictions on private property so long as the restrictions do not amount to a taking without just compensation or contravene any other federal constitutional provision." PruneYard Shopping Ctr. v. Robins, 447 U.S. 74, 81 (1980). A restriction is not unreasonable unless it forces an individual or group to bear a burden that should be borne by the public as a whole. Id. at 82-83.

[7]By the time Bourn and Pearson arrived, Baldi had already shot the deer. He does not contend that they took the deer, prevented him from shooting other deer, or in any way deprived him of any other recognized property interests. The court does

11

the circumstances, Bourn's investigation of a report of gunshots was reasonable, not conscience-shocking, and Pearson's response was also far from conscience-shocking.  Although Baldi argues that the defendants trespassed onto his property, "a trespass to property, negligent or intentional, is a common law tort; it does not infringe the federal constitution." Wise v. Bravo, 666 F.2d 1328, 1335 (10th Cir. 1981).

Therefore, Bourn and Pearson are entitled to summary judgment on Baldi's due process claim in Count V, and as a result, they are also entitled to summary judgment on the conspiracy claim, based on the same due process theory, in Count VI.

D.  State Action

Pearson also moves for summary judgment on the federal claims on the ground that he is not a state actor.  Section 1983 does not provide relief for actions by private parties who are not acting under color of state law.  See Gonzalez-Morales v. Hernandez-Arencibia, 221 F.3d 45, 49 (1st Cir. 2000).  Private parties may be liable under § 1983 only if the plaintiff can show "that the private party and the state actor jointly deprived plaintiff of [his] civil rights." Alexis v. McDonald's

_____

not address the issue urged by Baldi as to whether his shooting activities were legal.  See N.H. Rev. Stat. Ann. § 207:3.

12

Restaurants of Mass., 67 F.3d 341, 351 (1st Cir. 1995).

The court previously dismissed the federal claims as to McKenzie. As noted above, the record provided for summary judgment does not include any evidence of a triable issue as to whether Bourn and Pearson violated Baldi's asserted rights. In addition, although Baldi argues fervently that Bourn, McKenzie, and Pearson conspired to have Pearson drive his truck onto Baldi's field that night, the record evidence establishes that no conspiracy or joint action existed among the defendants, despite Baldi's unsubstantiated speculation to the contrary. Therefore, Pearson is also entitled to summary judgment on the federal claims against him on the alternative ground that he is not a state actor.

E.  State Law Claims

Baldi's fourteen state law claims are premised on private rights of action under the New Hampshire Constitution, New Hampshire criminal trespass statutes, and New Hampshire statutes relating to the regulation of fish and game. As such, Baldi alleges novel claims that have not been developed in New Hampshire law. Subject matter jurisdiction to consider Baldi's state law claims is supplemental to his federal claims. See § 1367(a).

When federal claims, which were the basis of subject matter

13

jurisdiction, have been dismissed, the court is obligated to reassess the jurisdictional basis for the state claims. See Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998). "The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if (1) the claim raises a novel or complex issue of State law, . . . [or] (3) the district court has dismissed all claims over which it has original jurisdiction . . . ." § 1367(c). "Courts generally decline to exercise supplemental jurisdiction over state claims if the federal predicate is dismissed early in the litigation." O'Connor v. Commonwealth Gas Co., 251 F.3d 262, 273 (1st Cir. 2001). "Certainly, if the federal claims are dismissed before trial, even though not unsubstantial in a jurisdictional sense, the state claims should be dismissed as well." Camelio, 137 F.3d at 672.

In this case, the federal claims have been dismissed. Baldi's state claims are novel. The suit was filed less than a year ago, and the state claims are not well-developed. Therefore, the court declines to exercise supplemental jurisdiction as to Baldi's state law claims. See § 1367(c).


Conclusion

For the foregoing reasons, the motions for summary judgment filed by Defendants Bourn and Pearson (documents no. 44 and 52)

14

are granted as to the federal claims.  The federal claims against Defendant McKenzie were previously dismissed.  The plaintiff's state law claims, Counts VII through XXI, are dismissed for lack of subject matter jurisdiction.  Therefore, the plaintiff's motion for summary judgment (document no. 39); Defendant McKenzie's motion for summary judgment (document no. 57); and the parts of the motions filed by Defendants Bourn and Pearson addressing the merits of the state law claims (documents no. 44 and 52) are denied for lack of subject matter jurisdiction. Defendant Bourn's motion to strike expert designation (document no. 47) is denied as moot.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

October 30, 2002

cc:   John A. Baldi, pro se
      R. Matthew Cairns, Esquire
      Paul A. Maggiotto, Esquire

15